**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY
(609) 989-2182

CHAMBERS OF
FREDA L. WOLFSON
CHIEF JUDGE

Clarkson S. Fisher Federal
Building & U.S. Courthouse
402 East State Street
Trenton, New Jersey 08608

**LETTER ORDER**

January 5, 2023

Ari H. Marcus, Esq.
Marcus & Zelman, LLC
701 Cookman Avenue, Suite 300
Asbury Park, New Jersey 07712

Gregg S. Kahn, Esq.
Wilson Elser Moskowitz Edelman & Dicker LLP
7 Giralda Farms
Madison, New Jersey 07940

    RE: *Paul Ruzzo v. Kirschenbaum & Kirschenbaum, P.C.*,
       No. 22-2525 (FLW)

Counsel:

  Plaintiff Paul Ruzzo ("Plaintiff" or "Ruzzo") filed the operative Complaint on April 29, 2022, on behalf of himself and those similarly situated, against Kirschenbaum & Kirschenbaum, P.C. ("Defendant" or "Kirschenbaum"). (ECF No. 1.) Ruzzo alleges that Defendant violated sections 1692e and 1692g of the Fair Debt Collection Practices Act ("FDCPA") because (1) Defendant's debt collection letter was false or deceptive and (2) the debt collection letter "overshadowed" Plaintiff's validation notice. On May 20, 2022, Defendant filed a motion to dismiss the Complaint. (ECF No 6.) On September 12, 2022, however, as the case was still pending, I directed the parties to submit supplemental briefing addressing Article III standing in light of the Supreme Court's decision in *TransUnion LLC v. Ramirez*, __U.S.__,141 S. Ct. 2190 (2021). (ECF No. 12.) On October 3, 2022, Plaintiff submitted a letter to the Court indicating that he took no position on standing. the parties submitted supplemental briefing, and Defendant responded on October 14, 2022. (*See* ECF Nos. 13 and 14.) In lieu of a formal Opinion, the Court renders its decision on standing in this Letter Order. The Court finds that Plaintiff does not have Article III standing to bring his §§ 1692e and 1692g claims.

  At any time during the pendency of a lawsuit, courts have an independent obligation to determine whether subject matter jurisdiction exists. *See Ballentine v. United States*, 486 F. 3d

806, 810 (3d Cir. 2007).[1] Article III of the U.S. Constitution limits the judicial power of federal courts to deciding "cases" or "controversies." § 2. This limitation serves the purpose of "prevent[ing] the judicial process from being used to usurp the powers of the political branches." *Clapper v. Amnesty*, 568 U.S. 398, 408 (2013) (citations omitted).

The doctrine of standing to sue is "rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To satisfy Article III's standing requirements, the Supreme Court has established that a plaintiff must show "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

Absent standing, there is no case or controversy, and a federal court cannot exercise subject-matter jurisdiction over the plaintiff's claims. Courts have an independent obligation to assess whether standing exists. "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12 (h)(3); *see also Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010) (A court "can dismiss a suit *sua sponte* for lack of subject jurisdiction at any stage in the proceeding.").

In *Spokeo*, the Supreme Court explained that concrete injuries may be both tangible and intangible, and "[i]n determining whether an intangible harm constitutes injury in fact, both history and Congress play important roles." 578 U.S. at 340. To that end, the Supreme Court instructed courts to "consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id*. at 341 (citing *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 775–77 (2000)). In so doing, courts could ensure that the harm alleged in cases of statutory violations is more than just a "bare procedural violation." *Id*. *Spokeo* left open the possibility that the mere "risk of harm" could satisfy the concreteness requirement. *Id*. The Supreme Court's recent ruling in *TransUnion*, however, clarified that material risk of future harm can only serve as a basis for standing as a concrete harm in suits where a plaintiff pursues injunctive relief to prevent the harm from occurring. 141 S. Ct. at 2210. In contrast to generally inadequate "risk of harm," the Court explained that a concrete injury requires actual "downstream consequences" or "adverse effects." *Id*.; *see also Schultz v. Midland Credit Mgmt., Inc.*, No. 16-4415, 2022 WL 3013082, at *4 (D.N.J. July 29, 2022) (explaining that to establish standing post-*TransUnion*, plaintiffs must show evidence that bears a close relationship to the elements of the common-law analogue, such as reliance under fraud, and "harmful downstream effects") (citing *Thome v. Sayer Law Group., P.C.*, 567 F. Supp. 3d 1057, 1071–74 (N.D. Iowa 2021)); *Sandoval v. Midland Funding, LLC*, No.

---

[1] Standing must be met and persist throughout all stages of litigation. *Hollingsworth v. Perry*, 570 U.S. 693, 705 (2013). A district court's obligation to assess standing continues throughout a case, because "[t]o qualify as a case fit for federal-court adjudication, 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997) (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)).

1809396, 2022 WL 2116769, at *4 (D.N.J. June 13, 2022) (finding no standing where plaintiffs asserted only an alleged statutory violation that resulted in no "downstream consequences" or "adverse effects" caused by the violation). Moreover, the Supreme Court made clear that *Spokeo* "rejected the proposition that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." 141 S. Ct. at 2205 (internal quotations omitted).

Here, Plaintiff alleges that he incurred an obligation to Slomin's. (Compl., ¶¶ 11-15.) On February 28, 2022, Defendant sent Plaintiff a collection letter (the "Letter") regarding the alleged consumer debt. (*Id.* at ¶ 17.) The Letter provided that

> Should you notify this law firm by March 30, 2022 that the debt or any portion thereof is disputed, we will obtain and mail to you verification of the debt or a copy of the judgment, if any, and if also requested, the name and address of the original creditor, if different from the current creditor.

(*Id.* at ¶ 20.) According to Plaintiff, this language would suggest to the least sophisticated consumer that Plaintiff could request verification of the debt by telephone. (*Id.* at ¶ 21.) However, pursuant to 1692g, within five days of the initial communication with a consumer in connection with the collection of any debt, a debt collector shall send the consumer a written notice containing a statement that if the consumer notified the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector. Thus, Plaintiff asserts that by "attempting to deceive consumers to believe that they were entitled to their statutory rights by disputing orally, Defendant created a significant risk that consumers would fail to dispute the debt properly. (*Id.* at ¶¶ 22-24.) As to harm, Plaintiff alleges in his Complaint that the Letter's failure to state that a request for verification of the debt must be in writing, has overshadowed Plaintiff's validation rights and "caused him real harm." (*Id.* at ¶ 27.) More specifically, Plaintiff alleges that as a result of Defendant's violations of the FDCPA, he was harmed by "being subjected to deceptive and misleading collection practices." (*Id.* at ¶ 30.) These allegations, however, do not constitute a concrete harm sufficient to confer standing in the wake of *TransUnion*.

This Court's recent decision in *Madlinger v. Enhanced Recovery Co., LLC*, No. 21-00154, 2022 WL 2442430, at *3 (D.N.J. July 5, 2022) is instructive in the instant action. There, the plaintiff, Patricia Madlinger ("Ms. Madlinger"), alleged concrete harm under two distinct theories: confusion and third-party disclosure. As to confusion, Ms. Madlinger alleged that the defendant had violated sections 1692e and 1692g of the FDCPA by sending out an allegedly misleading debt collection letter. Section 1692e generally prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." Section 1692g specifies the required contents in a written notice of debt and describes the process by which debts are to be disputed. In particular, Ms. Madlinger alleged that the least sophisticated consumer would be confused as to where to send a debt verification request given the inclusion of multiple addresses in a debt collection letter such that he or she could believe that none of the addresses in the letter was the correct address to dispute a debt. *Id*. at *5. In the context of standing, confusion, when accompanied by detrimental action or inaction, can have a sufficiently close relationship to the

traditional harm of common-law fraud. *Id*. To prove fraudulent misrepresentation, a plaintiff must demonstrate: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Bulboff v. King Aircraft Title, Inc.*, No. 19-18236, 2021 WL 1186822, at *7 (D.N.J. Mar. 30, 2021). In similar fashion, negligent misrepresentation claims require a showing of harm "caused to [plaintiffs] by their justifiable reliance upon" the false information. Restatement (Second) of Torts, § 552(1) (1977). Although I observed that courts have recognized that misleading communications may give rise to concrete harm for Article III standing, I found that Ms. Madlinger failed to allege reliance. *Id*. at *6. Importantly, Ms. Madlinger had not alleged that she had relied on the multiple addresses in the letter in making any decision to verify or dispute the debt. As such, Ms. Madlinger's general allegations of misleading debt communications in violation of §§ 1692e(10), (g) and g(b) were inadequate to confer Article III standing.

Here, similar to the *Madlinger* plaintiff, Plaintiff's allegations in his Complaint do not amount to concrete harm sufficient to establish Article III standing under the rubric set forth in *Spokeo* and clarified in *TransUnion*. However, unlike the *Madlinger* plaintiff, Plaintiff does not even allege a single harm as a result of Defendant's alleged conduct. Rather, Plaintiff merely alleges that he suffered "real harm" by being the target of Defendant's misleading and deceptive debt collection communication. (Compl., ¶¶ 27, 30.) Even accepting these allegations as true, they are conclusory and amount to no more than general allegations of informational injury. Such allegations, alone, are insufficient to confer Article III standing. *See TransUnion*, 141 S. Ct. at 2214 ("An 'asserted informational injury that causes no adverse effects cannot satisfy Article III.'" (citation omitted)).

"Adequacy of informational harms for standing purposes [] turns on a plaintiff's consequential action or inaction following receipt of a misleading or deceptive collection letter." *Huber v. Simon's* Agency, Inc., No. 19-01424, 2022 WL 1801497, at *4 (E.D. Pa. June 2, 2022). In the instant case, Plaintiff does not allege any form of reliance on the alleged misleading communication, let alone detrimental reliance. *See Kola v. Forster & Garbus LLP*, No. 19-10496, 2021 WL 4135153, at *4 (S.D.N.Y Sept. 10, 2021) ("[M]erely receiving a letter from a debt collector that was confusing or misleading as to the amount owed does not demonstrate a harm closely related to fraudulent or negligent misrepresentation—both of which require some form of reliance."); *see also Ward v. Natl. Patient Account Services Sols., Inc.*, 9 F.4th 357, 363 (6th Cir. 2021). In addition, although it appears that Plaintiff has hired an attorney to represent him in this matter, consulting a lawyer in and of itself is insufficient to meet Article III's injury-in-fact requirement. *See e.g., Deiker v. TrueAccord Corp.*, No. 20-00669, 2021 WL 4502138, at *3 (N.D. Ill. Sept. 30, 2021) ("even if a debt communication violates the FDCPA in some way, consulting an attorney does not in and of itself establish an injury-in-fact without further allegations of concrete harm"); *Cavazzini v. MRS Assocs.*, No. 21-5087, 2021 WL 5770273, at *7 (E.D.N.Y. Dec. 6, 2021) ("[H]iring an attorney [] does not support standing because the burdens of bringing a lawsuit cannot be the sole basis for standing."). Importantly, although Plaintiff alleges that the Letter would lead the least sophisticated consumer to believe that any dispute or request for validation under 1692g could be made via telephone, Plaintiff does not allege that the Letter dissuaded him from disputing or otherwise seeking a validation of his debt because of the alleged misleading language. Indeed, Plaintiff does not even claim that he attempted to validate the debt

4

via telephone or that the Letter's language somehow caused him to alter his course of action in any fashion. Instead, the Complaint merely alleges that the Letter suggests to the least sophisticated consumer that he or she could dispute or validate the debt via telephone, and that such an interpretation resulted in "real harm" to Plaintiff.

Absent allegations of any concrete harm, Plaintiff is asserting merely statutory violations that lack standing under *TransUnion*. Thus, this Court concludes that Plaintiff has no standing to assert his section 1692c, 1692e, and 1692f claims. Accordingly, this Court lacks subject matter jurisdiction over the instant action. Because Plaintiff was already provided with an opportunity to submit supplemental briefing analyzing whether he had Article III standing to bring each of his claims, Plaintiff's claims are dismissed without prejudice for lack of subject matter jurisdiction. This matter is **CLOSED**.

/s/ Freda L. Wolfson
Freda L. Wolfson
U.S. Chief District Judge

5